T.C. Memo. 2006-172

UNITED STATES TAX COURT

BRIAN F. NICELY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14979-04.                    Filed August 17, 2006.

Brian F. Nicely, pro se.

<u>Karen Lynne Baker</u>, for respondent.

MEMORANDUM OPINION

CHIECHI, <u>Judge</u>:  Respondent determined a deficiency of
$3,321 in petitioner's Federal income tax (tax) for his taxable
year 2002.

The issues remaining for decision are:

(1) Is petitioner entitled to deduct certain claimed automo-
bile expenses?  We hold that he is not.

(2) Is petitioner entitled to deduct certain claimed meal expenses?  We hold that he is not.

(3) Is petitioner entitled to deduct certain claimed clothing expenses?  We hold that he is not.

## Background

Some of the facts have been stipulated and are so found.

At all relevant times, including throughout 2002 and at the time he filed the petition in this case, petitioner resided in Ridgeley, West Virginia (Ridgeley).

During 2002, petitioner, a welder, was employed by Mendon Pipeline, Inc. (Mendon Pipeline), located in Ghent, West Virginia.  At all relevant times, Mendon Pipeline's policy was (1) to pay directly to the lodging provider lodging expenses incurred by an employee because the employee resided so far from the location of the job site (job site location) as to preclude such employee from safely making a daily round-trip drive from such employee's residence to the job site location and (2) not to pay any other expenses incurred by an employee, such as expenses for meals and automobile usage.

Petitioner timely filed electronically a tax return for his taxable year 2002 (petitioner's 2002 return).  In Schedule A-Itemized Deductions included as part of that return (2002 Schedule A), petitioner claimed "Job Expenses and Most Other Miscellaneous Deductions" totaling $13,384 prior to the application of

the two-percent floor imposed by section 67(a).[1]  Of that total, petitioner claimed $12,734 as "Unreimbursed employee expenses", $50 as "Tax preparation fees", and $600 as "Other expenses" for clothes, boots, and gloves.  With respect to the $12,734 of claimed "Unreimbursed employee expenses", petitioner, as required, completed Form 2106-EZ, Unreimbursed Employee Business Expenses, and included that form as part of petitioner's 2002 return (2002 Form 2106-EZ).  In the 2002 Form 2106-EZ, petitioner claimed the following "Unreimbursed employee expenses":

| Expense | Amount |
|---------|--------|
| Vehicle | [1]$8,782 |
| Meals | [2]3,952 |

[1]Petitioner calculated the $8,782 of claimed vehicle expenses by using the standard mileage rate for 2002 of 36.5 cents per mile and multiplying that rate by 24,060, the number of miles that petitioner claims he drove his automobile for business (business miles) during 2002.  At trial, petitioner conceded that the total amount of business miles claimed for 2002 in the 2002 Form 2106-EZ was overstated by approximately 3,000 miles.
[2]In calculating the $3,952 of claimed meal expenses, petitioner claimed in the 2002 Form 2106-EZ total meal expenses of $7,904 and reduced that total by 50 percent, as required by sec. 274(n).

As required by section 67(a), petitioner reduced the $13,384 of total "Job Expenses and Most Other Miscellaneous Deductions" claimed in the 2002 Schedule A by two percent of his adjusted gross income (i.e., by $1,091).  In determining the taxable

[1]All section references are to the Internal Revenue Code in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

income reported in petitioner's 2002 return, petitioner deducted the balance (i.e., $12,293), as well as the other itemized deductions claimed in the 2002 Schedule A that were not subject to the two-percent floor imposed by section 67(a).

Respondent issued to petitioner a notice of deficiency (notice) for his taxable year 2002. In that notice, respondent disallowed the total $12,293 of "Job Expenses and Most Other Miscellaneous Deductions" that petitioner claimed in the 2002 Schedule A after the reduction required by section 67(a).

#### Discussion

Petitioner bears the burden of proving that the determinations in the notice are erroneous.[2] Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Moreover, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). A taxpayer is required to maintain records sufficient to establish the amount of any deduction claimed. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Petitioner claims that, prior to the application of the two-percent floor imposed by section 67(a), he is entitled to deductions for $8,782 of automobile expenses, $3,952 of meal

---

[2]Petitioner does not claim that the burden of proof shifts to respondent under sec. 7491(a). In any event, petitioner has failed to establish that he satisfies the requirements of sec. 7491(a)(2). On the record before us, we find that the burden of proof does not shift to respondent under sec. 7491(a).

expenses,[3] a $50 tax preparation fee, and $600 of expenses for certain unidentified clothes and gloves and Rocky Wolverine boots.[4]  Respondent counters that petitioner has failed to carry his burden of establishing his entitlement to deduct any of those claimed expenses.[5]

A taxpayer is entitled to deduct all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business, "including * * * traveling expenses (including amounts expended for meals * * * other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business".  Sec. 162(a).  For certain kinds of expenses otherwise deductible under section 162(a), a taxpayer must satisfy certain substantiation requirements set forth in section 274(d) before such expenses will be allowed as deductions.

In order for petitioner's claimed expenses for the use of his automobile and for meals to be deductible, such expenses must

---

[3]In the 2002 Form 2106-EZ, petitioner claimed total meal expenses of $7,904, which he reduced by 50 percent, as required by sec. 274(n).

[4]Although the Court ordered petitioner to file a posttrial brief, he failed to do so.

[5]Respondent conceded at trial that petitioner incurred a tax preparation fee of $50.  Respondent's concession will not affect the deficiency determined in the notice unless we were to sustain petitioner's position with respect to his claimed expenses for the use of his automobile and/or meals.  That is because of the two-percent floor imposed by sec. 67(a).

satisfy the requirements of not only section 162(a) but also section 274(d). To the extent that petitioner carries his burden of showing that the expenses at issue for the use of his automobile and for meals satisfy the requirements of section 162(a) but fails to satisfy his burden of showing that such expenses satisfy the recordkeeping requirements of section 274(d), petitioner will have failed to carry his burden of establishing that he is entitled to deduct such expenses, regardless of any equities involved. See sec. 274(d); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

The recordkeeping requirements of section 274(d) will preclude petitioner from deducting amounts otherwise allowable under section 162(a) with respect to the use of his automobile or expenditures for meals while traveling away from home on business unless he substantiates the requisite elements of each such use or expenditure. See sec. 274(d); sec. 1.274-5T(b)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). A taxpayer is required to

> substantiate each element of an expenditure or use
> * * * by adequate records or by sufficient evidence
> corroborating his own statement. Section 274(d) con-
> templates that a taxpayer will maintain and produce
> such substantiation as will constitute proof of each
> expenditure or use referred to in section 274. Written
> evidence has considerably more probative value than
> oral evidence alone. In addition, the probative value
> of written evidence is greater the closer in time it
> relates to the expenditure or use. A contemporaneous
> log is not required, but a record of the elements of an
> expenditure or of a business use of listed property

made at or near the time of the expenditure or use, supported by sufficient documentary evidence, has a high degree of credibility not present with respect to a statement prepared subsequent thereto when generally there is a lack of accurate recall.  Thus, the corroborative evidence required to support a statement not made at or near the time of the expenditure or use must have a high degree of probative value to elevate such statement and evidence to the level of credibility reflected by a record made at or near the time of the expenditure or use supported by sufficient documentary evidence.  The substantiation requirements of section 274(d) are designed to encourage taxpayers to maintain the records, together with documentary evidence, as provided in paragraph (c)(2) of this section [1.274-5T, Temporary Income Tax Regs.].

Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016-46017 (Nov. 6, 1985).

The elements that a taxpayer must prove with respect to an expenditure for traveling away from home on business, including a meal, are:  (1) The amount of each such expenditure for traveling away from home, except that the daily cost of the traveler's own breakfast, lunch, and dinner may be aggregated; (2) the time of each such expenditure, i.e., the dates of departure and return for each trip away from home and the number of days away from home spent on business; (3) the place of each such expenditure, i.e., the destinations or locality of travel, described by name of city or town or other similar designation; and (4) the business purpose of each such expenditure, i.e., the business reason for the travel or the nature of the business benefit derived or expected to be derived as a result of travel.  Sec. 1.274-

5T(b)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

In lieu of substantiating the actual amount of any expenditure relating to the business use of a passenger automobile, a taxpayer may use a standard mileage rate established by the Internal Revenue Service (standard mileage rate).  See sec. 1.274-5(j)(2), Income Tax Regs.; Rev. Proc. 2001-54, sec. 5.02, 2001-2 C.B. 530, 532.  The standard mileage rate is to be multiplied by the number of business miles traveled.  Rev. Proc. 2001-54, sec. 5.02, 2001-2 C.B. at 532.  The use of the standard mileage rate establishes only the amount deemed expended with respect to the business use of a passenger automobile.  Sec. 1.274-5(j)(2), Income Tax Regs.  The taxpayer must still establish the amount (i.e., the business mileage), the time, and the business purpose of each such use.  Id.

In lieu of substantiating the actual amount spent for a meal while traveling away from home on business, a taxpayer may use an amount computed at the Federal meal and incidental expense (M&IE) rate set forth in appendix A of 41 C.F.R. chapter 301 (appendix A) for the locality of travel for each calendar day that the taxpayer is traveling away from home on business.  See sec. 1.274-5(j)(1), Income Tax Regs.; Rev. Proc. 2001-47, secs. 3.02(1)(a), 4.03, 2001-2 C.B. 332, 333-334 (applicable to, inter

alia, Jan. 1 through Sept. 30, 2002); Rev. Proc. 2002-63, secs. 3.02(1)(a), 4.03, 2002-2 C.B. 691, 693-694 (applicable to, inter alia, Oct. 1 through Dec. 31, 2002). The use of the M&IE establishes only the daily amount deemed spent for meals while traveling away from home on business. Sec. 1.274-5(j)(1), Income Tax Regs. The taxpayer must still establish the time, the place, and the business purpose of the daily expenditures for meals. Id.

With respect to the deductions that petitioner claims for 2002 with respect to the use of his automobile and for meals, petitioner testified that during that year he worked in Rocky Mount, Virginia, Wiley Ford, West Virginia, Hamilton, Pennsylvania, Warren, Pennsylvania, and Elk Garden, West Virginia. In support of that testimony, petitioner relies on a document (document one) that he prepared sometime shortly before the trial in this case in January 2006. Document one purports to show all the job site locations at which petitioner claims he worked during 2002, the respective time periods during which he claims he worked at such locations, and the respective round-trip mileages from his home in Ridgeley to such locations. Petitioner testified that in preparing document one he relied on his recollection and a telephone call to "the main office" of Mendon Pipeline, his employer during 2002.

In addition to document one, petitioner relies on two other documents to support his position with respect to the deductions that he is claiming for the use of his automobile and for meals. It is not clear from the record when one (document two) of those

two other documents was prepared.  Moreover, document two does not list all of the job site locations at which petitioner testified he worked during 2002 and which are shown on document one.  Instead, document two lists only the following three job site locations:  Warren, Pennsylvania, Morris Run, Pennsylvania, and Elk Garden, West Virginia.  The Morris Run, Pennsylvania, job site location at which petitioner claims he worked for three months during 2002 is not even listed on document one, which is the document that purports to show all of the job site locations where petitioner worked during that year.

The other document (document three) on which petitioner relies contains handwritten notations on a letter dated May 6, 2004, from Mendon Pipeline, petitioner's employer during 2002.[6] As was true of document two, it is not clear when those handwritten notations were made on that letter.  Moreover, as was also true of document two, such handwritten notations do not list all of the job site locations at which petitioner testified he worked during 2002 and which are shown on document one.  Instead, like document two, such handwritten notations list only the following three job site locations:  Warren, Pennsylvania, Morris Run, Pennsylvania, and Elk Garden, West Virginia.  As was true of

---

[6]The May 6, 2004 Mendon Pipeline letter describes that company's policy regarding the payment of the lodging expenses of its employees in certain circumstances and the nonpayment of any other expenses of its employees.

document two, the Morris Run, Pennsylvania, job site location at which petitioner claims he worked for three months during 2002 is not even listed on document one, which is the document that purports to show all of the job site locations where petitioner worked during that year.

Petitioner concedes that he did not prepare document one at or near the time in 2002 of the use of his automobile or the expenditures for meals that are at issue in this case. Petitioner failed to establish when document two was prepared and when the handwritten notations on document three were made. Moreover, we found the three documents on which petitioner relies to be inconsistent and not credible in certain material respects. By way of illustration, in addition to the inconsistencies in such documents discussed above regarding the job site locations at which petitioner claims he worked during 2002, in document two and document three petitioner indicated that during 2002 he worked in Elk Garden, West Virginia, for four months, whereas in document one petitioner indicated that during 2002 he worked in Elk Garden, West Virginia, for six weeks. By way of further illustration, in document two and document three petitioner indicated that the one-way mileage between his home in Ridgeley and Warren, Pennsylvania, is 178 miles, whereas in document one

petitioner indicated that such one-way mileage is 245 miles.[7]  We are unwilling to rely on document one, document two, or document three.  Petitioner admitted at trial that he has no other documents or records establishing (1) that during 2002 he worked at each of the different job site locations at which he claims he worked for the period of time during that year that he claims he spent at each such location and (2) that during 2002 he drove the respective round-trip mileages that he claims he drove from his home in Ridgeley to such locations.

On the record before us, we find that petitioner has failed to carry his burden of showing the amount of each business use of his automobile based on mileage and the time of each such use (i.e., the date of each such use).[8]  On that record, we further

---

[7]We note that in document three petitioner indicated that he did not stay overnight in Elk Garden, W.Va., at which he claims he worked during 2002.  Nor did petitioner stay overnight in Wiley Ford, W.Va., a job site location listed on document one at which petitioner claims he worked during 2002 and which is, according to document one, only five miles from petitioner's home in Ridgeley.  At least with respect to his claimed job site locations in Elk Garden, W.Va., and Wiley Ford, W.Va., we find that petitioner has failed to show that any travel expenses that he is claiming as deductions for the use of his automobile and for meals with respect to his purported working at such locations were paid or incurred while petitioner was away from home within the meaning of sec. 162(a)(2).

[8]On the record before us, we find that petitioner has failed to carry his burden of establishing the respective round-trip mileages between his home in Ridgeley and the job site locations at which he claims he worked during 2002.  In this regard, we note that petitioner claimed at trial that he calculated the respective round-trip mileages between his home in Ridgeley and

(continued...)

find that petitioner has failed to carry his burden of establishing that he is entitled for his taxable year 2002 to the deduction that he claims for the use of his automobile.[9]

On the record before us, we also find that petitioner has failed to carry his burden of establishing that he is entitled for his taxable year 2002 to the deduction that he claims for meals. The record is devoid of reliable evidence relating to the amount, the time, and the place of the meal expenses that petitioner contends he is entitled to deduct. Petitioner acknowledged at trial that he has no receipts for any of the meal expenses at issue because "I was told that meals * * * that was the one thing you could claim without receipt." Moreover, it is not clear whether petitioner used the M&IE rate set forth in appendix A of 41 C.F.R. chapter 301 in claiming such meal expenses. If he did use such a rate, he did not use the correct rate set forth in appendix A. In document two, which is the only document in the record detailing petitioner's claimed total meal expenses of $7,904 shown in his 2002 Form 2106-EZ, petitioner

---

[8](...continued)
those claimed job site locations by looking at the mileage readings reflected in his automobile during that year. However, petitioner admitted at trial that document one which purports to show all his claimed job site locations during 2002 was not prepared until shortly before the trial in this case and that he has no records showing the mileage readings reflected in his automobile during that year.

[9]At trial, petitioner conceded that he "overclaimed 3,000 some odd miles".

indicated that he incurred a daily meal expense of $42 for the period January through May 2002, $38 for the period June through August 2002, and $34 for the period September through December 2002.[10]  The applicable M&IE for all of the job site locations to which petitioner claims he traveled during 2002 is $30 a day. 41 C.F.R. ch. 301, app. A (2002).

With respect to the deduction that petitioner claims for 2002 for certain unidentified clothes and gloves and Rocky Wolverine boots, petitioner admitted at trial that he does not have any receipts for those items.  Moreover, articles of clothing, including shoes or boots, are deductible under section 162(a) only if the clothing is required in the taxpayer's employment, is not suitable for general or personal wear, and is not worn for general or personal purposes.  Yeomans v. Commissioner, 30 T.C. 757, 767-768 (1958).  The record is devoid of evidence that the unidentified clothes and gloves and the Rocky Wolverine boots were required in petitioner's employment, were not suitable for general or personal wear, and were not worn for general or

_____

[10]In calculating the claimed total meal expenses of $7,904, petitioner used a 52-week period, which resulted in total meal expenses of $7,952.  Petitioner then reduced that total amount by $48 in order to arrive at the claimed total meal expenses of $7,904 shown in his 2002 Form 2106-EZ.  In document one that he prepared shortly before the trial in this case, petitioner indicated that he worked only 48 weeks during 2002.  Moreover, as discussed supra note 7, petitioner acknowledges that he did not stay overnight on the respective days on which he claims he traveled from his home in Ridgeley to Elk Garden, W.Va., and to Wiley Ford, W.Va.

personal purposes.  In fact, petitioner acknowledged at trial that he was wearing Rocky Wolverine boots.

On the record before us, we find that petitioner has failed to carry his burden of establishing that he is entitled for his taxable year 2002 to the deduction that he claims for clothes, boots, and gloves.

We have considered all of the parties' contentions and arguments that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing,

<u>Decision will be entered for</u> <u>respondent</u>.